UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FEED COMMODITIES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 13-cv-12239-KAR |
| DANIEL G. GRAY, ET AL., | ) ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS
(Dkt. No. 192)

Following a jury's verdict for Feed Commodities International, Inc., the Plaintiff in

counterclaim ("Plaintiff"), this case is before the court on Plaintiff's motion for attorneys' fees

and costs in the amount of $155,708.42 (Dkt. No. 192).  Daniel G. Gray, Matthew C. Gray, and

Edwin C. Gray, Defendants in counterclaim ("Defendants"), oppose the amount of attorneys' fees

that Plaintiff has requested (Dkt. No. 201).  For the following reasons, and as more fully set forth

below, the court denies Plaintiff's motion without prejudice.

I.      BACKGROUND

A.      Defendants Original Complaint and Plaintiff's Counterclaim

A recitation of the history of this case is necessary to the court's decision.  Defendants are

partners who own and operate Full Flight Game Farm in Bernardston, Massachusetts, which

raises game birds for sale (Dkt. No. 1-1 at ¶¶1, 2; Dkt. No. 116 at ¶ 2).  Plaintiff, a Vermont

corporation, sells feed for game birds (Dkt. No. 1-1 at ¶3).  "In early June 2010 [Defendants]

began noticing that some of Full Flight Game Farm's four-week old game birds were showing

signs of stunted growth, poor feather growth, deformities, joint issues that were causing birds to

limp, extra long wing feathers, respiratory issues, increased water consumption, watery feces and increased mortality" (*id*. at ¶8).  "At the same time [Defendants] started noticing a loss in egg production and hatching issues in their breeders and hatchery" (*id.*).  Testing determined that the feed that Plaintiff had delivered in April 2010 did not meet previously agreed upon specifications and caused the birds' deaths and deformities, as well as decreased egg production and other damages (*id.* at ¶¶5, 7, 11, 13, 15).  Plaintiff delivered an additional load of out-of-specification feed to Defendants in 2011, which resulted in losses (*id.* at ¶23).

Defendants originally filed suit against Plaintiff in state court seeking damages based on breach of contract (count I), breach of the express warranty (count II), breach of the implied warranty of fitness for a particular purpose (count III), breach of the implied warranty of merchantability (count IV), negligence (count V), and unfair business practices under Mass. Gen. Laws ch. 93A, § 11 (hereafter "original case") (Dkt. No. 1-1).  Plaintiff removed the original case from state court to this court on September 11, 2013 (Dkt. No. 1).  On October 2, 2013, Attorney Dawn D. McDonald, who entered her appearance for Plaintiff (Dkt. No. 12), answered the complaint (Dkt. No. 14), and filed a counterclaim and a third party complaint against Defendants (Dkt. No. 13) (hereafter "counterclaim").  In the counterclaim, Plaintiff alleged that Defendants Edwin C. Gray and Full Flight Game Farm breached their contract with Plaintiff (counts I and II), and that Full Flight Game Farm was unjustly enriched (count III) due to Defendants' failure to pay for feed that Plaintiff delivered to Defendants (Dkt. No. 13).

After discovery, the original case, which arose from the defective feed that was delivered in April 2010 and in 2011, was settled by alternative dispute resolution on June 11, 2015 (Dkt. No. 101; Dkt. No. 116 at 3 n.2).  On June 23, 2015, Plaintiff moved for an order to temporarily restrain the settlement proceeds (Dkt. No. 104), which this court denied on July 7, 2015 (Dkt.

Nos. 111, 114).  On July 17, 2015, Plaintiff filed an emergency motion to amend the

counterclaim and third party complaint to add trustee defendants (Dkt. No. 115), and moved for

trustee process attachment of the settlement proceeds as security in the event that Plaintiff

obtained a favorable judgment on the counterclaim (Dkt. No. 116).  The court allowed the

motions on July 23, 2015 (Dkt. Nos. 123, 124).

Plaintiff moved for summary judgment on the counterclaim in August 2015 (Dkt. No.

134).  After a hearing in October 2015, this court denied the motion and scheduled the trial to

begin on February 22, 2016 (Dkt. Nos. 144, 145).

Plaintiff filed four motions in *limine* (Dkt. Nos. 151, 152, 153, 168), which the court

denied (Dkt. Nos. 163, 164, 166, 188).  On February 19, 2016, the court allowed Plaintiff's

emergency ex parte motion to attach Defendants' real estate (Dkt. Nos. 180, 182).  Plaintiff filed

a second amended counterclaim to name the proper parties (Dkt. Nos. 179, 183).

Trial commenced before the court and a jury on February 22, 2016, and continued on

February 23 and 24, 2016, when the jury returned verdicts for the Plaintiff on all three counts of

the counterclaim (Dkt. No. 198).  The jury awarded damages as follows:  $250,126.10 for the

feed that Plaintiff delivered to Defendants; interest at the rate of 9% per year in the amount of

$104,422; "attorney fees as described on [the] credit application and agreement form;" and costs

(*id*.).

    B.  <u>Plaintiff's Motion for Attorneys' Fees and Costs and Defendants' Response</u>

Plaintiff submitted a motion for attorneys' fees and costs in the amount of $155,708.42

(Dkt. No. 192).  The motion was supported by counsel's affidavit and approximately fifty-three

pages of monthly invoices that counsel submitted to Plaintiff for services furnished from

November 4, 2013 through February 26, 2016 (Dkt. Nos. 192-1, 192-2).  The bills, which were

redacted, presumably on the basis of attorney-client privilege, itemize the dates, the descriptions of services performed, the individuals who performed the services, the amount of time each person expended to perform the tasks, and the charge for the services based upon each individual's hourly rate (Dkt. No. 192-2). The invoices separately list the costs that were incurred during each billing period (*id.*). Trial counsel's supporting affidavit states her hourly billing rate, and the hourly billing rates of four other attorneys and a paralegal who performed work on the case (Dkt. No. 192-1 at ¶¶3 – 8). Counsel avers that "[t]he hourly rates charged by counsel in this matter are reasonable given the experience and skill level of counsel and are consistent with charges customarily made by law firms handling matters of this type" and that the hours spent by counsel are "reasonable based on the complexity of legal issues, litigiousness of the Defendants and a variety of delays and procedural problems generated by the Defendants" (Dkt. No. 192-1 at ¶¶9, 12). Counsel explained that the cost of securing the presence of their expert witness from North Carolina was a necessary trial expense (Dkt. No. 192-1 at ¶10).

Defendants objected to the amount of Plaintiff's requested attorneys' fees (Dkt. No. 201). Defendants' counsel was not familiar with the qualifications and experience of the four attorneys who assisted trial counsel and questioned whether their time was "'excessive, redundant or otherwise unnecessary'" (Dkt. No. 201 at 3 ¶2). Defendants asserted that Plaintiff submitted bills for work that pertained to the original suit, which settled in June 2015 (Dkt. No. 201 at 3 ¶3). According to Defendants' counsel, who also represented Defendants in the original case, each party was responsible for its own fees and costs for the litigation of the original case and "[t]wo different insurance companies paid legal fees for occurrences in 2010 and 2011," which were the subject of the that suit (*id.*). In addition, Defendants objected to the amount of time that was

billed for litigation of the counterclaim on the grounds that the case was not complex and the parties stipulated to certain evidence (*id*. at 4 ¶¶4, 5, 6).

II.   DISCUSSION

The jury awarded Plaintiff attorney's fees "as described on [the] credit application and agreement form" (Dkt. No. 198).  *See Rockland Trust Co. v. Computer Associated Int'l, Inc*., No. 95-11683-DPW, 2008 WL 3824791, at *6 (D. Mass. Aug. 1, 2008).  According to the credit application and agreement -- the contract -- between Plaintiff, the seller of bird feed, and Defendants, the buyers,

> [i]f Buyers['] account is placed for collection, reasonable attorney fees and cost of collection will be paid by Buyer[s].

(Dkt. No. 13 at 5).  Defendants do not appear to quibble about the payment of costs (Dkt. No. 201).  Plaintiff's request of $155,708.42, however, does not separate attorneys' fees from costs (Dkt. Nos. 192, 192-1).  Although there no dispute that Plaintiff is entitled to attorney's fees, the parties disagree as to the amount.

"Under Massachusetts law, when a fee provision calls for 'reasonable' fees, a court should consider, inter alia, the ability and reputation of the attorney, the time spent, the prices usually charged [by other attorneys in the same area], the amount of money or property affected by the controversy and the results secured."  *RFF Family P'ship, L.P. v. Link Dev., L.L.C.*, 962 F. Supp. 2d 340, 343 (D. Mass. 2013) (citing *AccuSoft Corp. v. Palo*, 237 F.3d 31, 61 (1st Cir. 2001)). *See also Janney Montgomery Scott, L.L.C. v. Tobin*, 692 F. Supp. 2d 192, 195 (D. Mass. 2010) (quoting *Haddad v. Wal-Mart Stores, Inc. (No. 2)*, 920 N.E.2d 278, 281 (Mass. 2010)); *Cummings v. Nat'l Shawmut Bank,* 188 N.E. 489, 492 (Mass. 1934).  "'[T]he time reasonably expended and the hourly rates reasonably charged to obtain the results achieved'" are the most significant factors. *Janney Montgomery Scott, L.L.C.*, 692 F. Supp. 2d at 196 (quoting *Haddad*,

920 N.E.2d at 282).  "The district court has broad discretion in determining the appropriate attorneys' fees."  *Janney Montgomery Scott, L.L.C.*, 692 F. Supp. 2d at 196.

"The party seeking attorney's fees bears the burden of showing that the amount sought is reasonable."  *WHTR Real Estate Ltd. P'ship v. Venture Distributing, Inc.*, 825 N.E.2d 105, 111 (Mass. App. Ct. 2005).  "The burden is on the applicant to provide documentation for the work." *Janney Montgomery Scott, L.L.C.*, 692 F. Supp. 2d at 197.  Here, Plaintiff's submissions in support of its request for attorneys' fees fall short of presenting sufficient evidence to support its claim that the requested amount is reasonable.  *See Janney Montgomery Scott L.L.C.,* 692 F. Supp. 2d at 197 (rejecting portion of fee request based on vague documentation, which lacked detail); *RFF Family P'ship, L.P. v. Link Dev., L.L.C.*, Civil Action No. 14-10065-NMG, 2015 WL 1472253, at *4 (D. Mass. Mar. 31, 2015), *aff'd sub nom. RFF Family P'ship, L.P. v. Ross*, 814 F.3d 520 (1st Cir. 2016) ("Plaintiff ultimately bears the burden of providing sufficiently detailed documentation from which the [c]ourt may determine the reasonableness of the fees requested").

Although counsel's affidavit presents the hourly rates for the four attorneys who performed work on Plaintiff's case, and states that these rates are "reasonable given the skill level of counsel and are consistent with charges customarily made by law firms handling matters of this type," Plaintiff's submissions lack details to support these bare assertions regarding the attorneys' backgrounds and the hourly rates of attorneys with commensurate experience in the same geographic area (Dkt. Nos. 192, 192-1).  The court needs this information to determine whether the charged rates are reasonable.  *See RFF Family P'ship, L.P.,* 962 F. Supp. 2d at 343 (attorney's reasonable hourly rate was determined by comparing rates charged for similar legal services in the geographic area).  *Compare Rosie D. ex rel. John D. v. Patrick*, 593 F. Supp. 2d

325, 329 (D. Mass. 2009) ("In connection with the calculation of the appropriate hourly rate

[under the lodestar method used to calculate statutory fee awards], the First Circuit requires that

affidavits be submitted attesting to the reasonableness of the rates by knowledgeable attorneys

unconnected to the underlying litigation"); *Astro-Med, Inc. v. Plant*, C.A. No. 06-533 ML, 2008

WL 2883769, at *5 (D.R.I. July 25, 2008), *amended in part by* No. CA 06-533 ML, 2010 WL

537101 (D.R.I. Feb. 12, 2010) ("The parties have provided dueling expert affidavits" on the issue

of the prevailing rates for attorneys who practice in the area).

      Based on a review of the monthly itemized bills for legal services that were submitted to

the court to support Plaintiff's fee request, it appears that Defendant's assertion -- that time spent

working on the original case is included in the requested amount of fees -- is well-founded (Dkt.

No. 201 at 3 ¶3).  The invoices cover the period prior to the settlement of the original case in

June 2015 and the work related to that case (Dkt. No. 192-2).  For example, the bills from

November 2014 and January 2015 include time expended on insurance coverage issues (Dkt. No.

192-2 at 21-22, 24-26).  In order to calculate the fee award and to ensure that the award does not

duplicate the fees already recovered for the litigation of the original case, the court needs a

detailed designation of the specific tasks that were involved in litigating the counterclaim, along

with the dates that the work was performed, and the time spent performing the work.  *Compare*

*Rosie D.*, 593 F. Supp. 2d at 329 ("In connection with the calculation of the reasonable number

of hours expended, the First Circuit has required that prevailing plaintiffs maintain and submit

detailed, contemporaneously-recorded time records describing with particularity the date,

activity and time spent on each litigation task") (citing *Grendel's Den, Inc. v. Larkin,* 749 F.2d

945, 952 (1st Cir. 1984)); *RFF Family P'ship, L.P.*, 2015 WL 1472253, at *4 (rejecting fees for

legal work that pertained to proceedings that were unrelated to the claims for which plaintiff

recovered after a jury trial); *Twin Fires Inv., L.L.C. v. Morgan Stanley Dean Witter & Co.*, 837 N.E.2d 1121, 1137 (Mass. 2005) ("The plaintiffs' submission [, which the court described as a 'data dump,'] fell short, far short, of their obligation to submit sufficient documentation to enable the judge to evaluate the hours spent on particular aspects of the case or the precise nature of the work").

III.   CONCLUSION

For these reasons, Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. No. 192) is DENIED without prejudice pending Plaintiff's submission to the court of the supporting documentation that is described above, specifically:  (1) attorneys' fees incurred in litigating the counterclaim, as opposed to those incurred in litigating the original case, including support for the hourly rates as being consistent with the rates charged by attorneys who practice in the geographic area; and (2) as an item separate from attorneys' fees, costs incurred in litigating the counterclaim, as opposed to those incurred in litigating the original case.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED: June 6, 2016