UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEED COMMODITIES INTERNATIONAL, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )   Case No. 13-cv-12239-KAR |
| DANIEL G. GRAY, et al., | ) ) ) |
| Defendants. | ) |

MEMORANDUM AND ORDER ON PLAINTIFF'S RENEWED MOTION FOR
ATTORNEYS' FEES AND COSTS
(Dkt. No. 204)

ROBERTSON, U.S.M.J.

I. INTRODUCTION

Following a jury's verdict for Feed Commodities International, Inc., the Plaintiff in counterclaim ("Plaintiff"), this case is before the court on Plaintiff's renewed motion for attorneys' fees and costs in the amount of $152,168.42 (Dkt. No. 204). For the following reasons, and as more fully set forth below, the court allows Plaintiff's renewed motion, as modified.

II. BACKGROUND

A. Defendants' Original Complaint and Plaintiff's Counterclaim

A recitation of the history of this case is necessary to the court's decision. Daniel G. Gray, Matthew C. Gray, and Edwin C. Gray, defendants-in-counterclaim ("Defendants"), are partners who own and operate Full Flight Game Farm in Bernardston, Massachusetts, which raises game birds for sale (Dkt. No. 1-1 at ¶¶1, 2; Dkt. No. 116 at ¶ 2). Plaintiff, a Vermont corporation, sells feed for game birds (Dkt. No. 1-1 at ¶3). "In early June 2010 [Defendants]

1

began noticing that some of Full Flight Game Farm's four-week old game birds were showing signs of stunted growth, poor feather growth, deformities, joint issues that were causing birds to limp, extra-long wing feathers, respiratory issues, increased water consumption, watery feces and increased mortality" (*id*. at ¶8).  "At the same time [Defendants] started noticing a loss in egg production and hatching issues in their breeders and hatchery" (*id.*).  Testing determined that the feed that Plaintiff had delivered in April 2010 did not meet previously agreed upon specifications and caused the birds' deaths and deformities, as well as decreased egg production and other damages (*id.* at ¶¶5, 7, 11, 13, 15).  Plaintiff delivered an additional load of out-of-specification feed to Defendants in 2011, which resulted in losses (*id.* at ¶23).

Defendants originally filed suit against Plaintiff in state court seeking damages based on breach of contract (count I), breach of the express warranty (count II), breach of the implied warranty of fitness for a particular purpose (count III), breach of the implied warranty of merchantability (count IV), negligence (count V), and unfair business practices under Mass. Gen. Laws ch. 93A, § 11 (count VI) (hereafter "original case") (Dkt. No. 1-1).  Plaintiff removed the original case from state court to this court on September 11, 2013 (Dkt. No. 1).  On October 2, 2013, Attorney Dawn D. McDonald, who entered her appearance for Plaintiff (Dkt. No. 12), answered the complaint (Dkt. No. 14), and filed a counterclaim and a third party complaint against Defendants (Dkt. No. 13) (hereafter "counterclaim").  In the counterclaim, Plaintiff alleged that Defendants Edwin C. Gray and Full Flight Game Farm breached their contract with Plaintiff (counts I and II), and that Full Flight Game Farm was unjustly enriched (count III) due to Defendants' failure to pay for feed that Plaintiff delivered to Defendants (Dkt. No. 13).

After discovery, the original case, which arose from the defective feed that was delivered in April 2010 and in 2011, was settled by alternative dispute resolution on June 11, 2015 (Dkt.

No. 101; Dkt. No. 116 at 3 n.2). On June 23, 2015, Plaintiff moved for an order to temporarily restrain the settlement proceeds and requested an equitable attachment (Dkt. No. 104), which this court denied on July 7, 2015 (Dkt. Nos. 111, 114). On July 17, 2015, Plaintiff filed an emergency motion to amend the counterclaim and third party complaint to add trustee defendants (Dkt. No. 115), and moved for trustee process attachment of the settlement proceeds as security in the event that Plaintiff obtained a favorable judgment on the counterclaim (Dkt. No. 116). The court allowed the motions on July 23, 2015 (Dkt. Nos. 123, 124).

Plaintiff moved for summary judgment on the counterclaim in August 2015 (Dkt. No. 134). After a hearing in October 2015, this court denied the motion and scheduled the trial to begin on February 22, 2016 (Dkt. Nos. 144, 145).

Plaintiff filed four pre-trial motions (Dkt. Nos. 151, 152, 153, 168), which the court denied (Dkt. Nos. 163, 164, 166, 188). On February 19, 2016, the court allowed Plaintiff's emergency ex parte motion to attach Defendants' real estate (Dkt. Nos. 180, 182). Plaintiff filed a second amended counterclaim to name the proper parties (Dkt. Nos. 179, 183).

Trial commenced before the court and a jury on February 22, 2016, and continued on February 23 and 24, 2016, when the jury returned verdicts for the Plaintiff on all three counts of the counterclaim (Dkt. No. 198). The jury awarded damages as follows: $250,126.10 for the feed that Plaintiff delivered to Defendants; interest at the rate of 9% per year in the amount of $104,422; "attorney fees as described on [the] credit application and agreement form;" and costs (*id.*).

        B.    <u>Plaintiff's First Motion for Attorneys' Fees and Costs, Defendants' Response, and the Court's Order</u>

On February 26, 2016, Plaintiff submitted a motion for attorneys' fees and costs in the total amount of $155,708.42 (Dkt. No. 192). The motion was supported by the affidavit of lead

3

counsel, Attorney McDonald, and approximately fifty-three pages of monthly invoices that counsel submitted to Plaintiff for services furnished from November 4, 2013 through February 26, 2016 (Dkt. Nos. 192-1, 192-2). The bills, which were redacted on the basis of attorney-client privilege, itemized the dates, the descriptions of services performed, the individuals who performed the services, the amount of time each person expended to perform the tasks, and the charge for the services based upon each individual's hourly rate (Dkt. No. 192-2; Dkt. No. 204-2 ¶8 n.2). Attorney McDonald's supporting affidavit stated her hourly billing rate, and the hourly billing rates of four other attorneys and a paralegal from her law firm who performed work on the case (Dkt. No. 192-1 at ¶¶3 – 8). The invoices separately listed the costs that were incurred during each billing period (Dkt. No. 192-2). Counsel explained that the cost of securing the presence of their expert witness from North Carolina was a necessary trial expense (Dkt. No. 192-1 at ¶10).

Defendants objected to the amount of Plaintiff's requested attorneys' fees, $148,939, but did not quibble about the payment of the amount of costs that Plaintiff submitted, $6,769.42 (Dkt. No. 201). Defendants' counsel was not familiar with the qualifications and experience of the four attorneys who assisted trial counsel and questioned whether their time was "'excessive, redundant or otherwise unnecessary'" (Dkt. No. 201 at 3 ¶2). Defendants asserted that Plaintiff submitted bills for work that pertained to the original suit, which settled in June 2015 (Dkt. No. 201 at 3 ¶3). According to Defendants' counsel, who also represented Defendants in the original case, each party was responsible for its own fees and costs for the litigation of the original case and "[t]wo different insurance companies paid legal fees for occurrences in 2010 and 2011," which were the subject of the that suit (*id.*). In addition, Defendants objected to the amount of

time that was billed for litigation of the counterclaim on the grounds that the case was not complex and the parties stipulated to certain evidence (*id*. at 4 ¶¶4, 5, 6).

Based on Defendants' arguments and the lack of detailed support for the Plaintiff's attorneys' hourly rates, the court denied Plaintiff's original motion for fees and costs, without prejudice, on June 6, 2016 (Dkt. No. 203).

        C.      <u>Plaintiff's Renewed Motion for Attorneys' Fees and Costs</u>

On June 16, 2016, Plaintiff renewed its motion for attorney's fees in the revised amount of $145,399, and costs in the amount of $6,769.42 (Dkt. No. 204). Attorney McDonald submitted her affidavit and the affidavits of three Springfield litigators in support of Plaintiff's renewed motion (Dkt. Nos. 204-2, 204-3, 204-4, 204-5).

In addition, Plaintiff provided the same fifty-three pages of the attorneys' monthly invoices, which were provided with the first motion for attorneys' fees and costs (Dkt. No. 204-1). These invoices, however, deleted fees in the amount of $3,540 for work performed on the original suit in November and December 2014 (Dkt. No. 204-1 at 21-26; Dkt. No. 204-2 ¶8). Defendants did not respond to Plaintiff's renewed motion.

For the reasons stated below, the renewed motion for attorneys' fees is allowed in an amount modified by the court, and the renewed motion for costs is allowed in full.

    III.    <u>DISCUSSION</u>

The jury awarded Plaintiff attorney's fees "as described on [the] credit application and agreement form" (Dkt. No. 198). *See Rockland Tr. Co. v. Computer Associated Int'l, Inc.*, No. 95-11683-DPW, 2008 WL 3824791, at *6 (D. Mass. Aug. 1, 2008). According to the credit application and agreement -- the contract -- between Plaintiff, the seller of bird feed, and Defendants, the buyers,

> [i]f Buyers['] account is placed for collection, reasonable attorney fees and cost of collection will be paid by Buyer[s].

(Dkt. No. 13 at 5).

### A.     Legal Standards

"Under Massachusetts law, when a fee provision calls for 'reasonable' fees, a court should consider, inter alia, the ability and reputation of the attorney, the time spent, the prices usually charged [by other attorneys in the same area], the amount of money or property affected by the controversy and the results secured."  *RFF Family P'ship, L.P. v. Link Dev., L.L.C.*, 962 F. Supp. 2d 340, 343 (D. Mass. 2013) (citing *AccuSoft Corp. v. Palo*, 237 F.3d 31, 61 (1st Cir. 2001)). *See also Janney Montgomery Scott, L.L.C. v. Tobin,* 692 F. Supp. 2d 192, 195 (D. Mass. 2010) (quoting *Haddad v. Wal-Mart Stores, Inc. (No. 2)*, 920 N.E.2d 278, 281 (Mass. 2010)); *Cummings v. Nat'l Shawmut Bank,* 188 N.E. 489, 492 (Mass. 1934).  "'[T]he time reasonably expended and the hourly rates reasonably charged to obtain the results achieved'" are the most significant factors.  *Janney Montgomery Scott, L.L.C.*, 692 F. Supp. 2d at 196 (quoting *Haddad*, 920 N.E.2d at 282).  "The trial court's discretion with respect to fee awards is extremely broad." *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992).

"The party seeking attorney's fees bears the burden of showing that the amount sought is reasonable."  *WHTR Real Estate Ltd. P'ship v. Venture Distrib., Inc.*, 825 N.E.2d 105, 111 (Mass. App. Ct. 2005).  "Plaintiff ultimately bears the burden of providing sufficiently detailed documentation from which the [c]ourt may determine the reasonableness of the fees requested." *RFF Family P'ship, L.P. v. Link Dev., L.L.C.*, Civil Action No. 14-10065-NMG, 2015 WL 1472253, at *4 (D. Mass. Mar. 31, 2015), *aff'd sub nom. RFF Family P'ship, L.P. v. Ross*, 814 F.3d 520 (1st Cir. 2016)).  *See Janney Montgomery Scott, L.L.C.*, 692 F. Supp. 2d at 197 ("The burden is on the applicant to provide documentation for the work").

Plaintiff seeks $145,399 in attorneys' fees (Dkt. No. 204). Plaintiff's submissions in support of its renewed motion for fees establish that the attorneys' hourly rates are reasonable. The number of hours expended, however, is reduced to reflect work on five inconsequential motions.

        B.     Calculation of Attorneys' Fees

            1.     Reasonable hourly rates

To support the renewed motion for attorneys' fees, Plaintiff has submitted the affidavits of Attorney McDonald, the lead counsel for the counterclaim, and of three Springfield attorneys (Dkt. No. 204-2, 204-3, 204-4, 204-5). *See RFF Family P'ship, L.P.,* 962 F. Supp. 2d at 343 (attorney's reasonable hourly rate was determined by comparing rates charged for similar legal services in the geographic area). Attorney McDonald has practiced in state and federal court since January 2001, is a partner and the head of the litigation department in a Springfield law firm, and has handled complex civil and commercial litigation (Dkt. No. 204-2 ¶11). From October 2013 through February 2014, her hourly rate was $280; it increased to $300 in March 2014 (Dkt. No. 204-1; Dkt. No. 204-2 ¶11). The affidavits of the three Springfield litigators averred that their hourly rates ranged from $275 to $350 (Dkt. Nos. 204-3 ¶4, 204-4 ¶3, 204-5 ¶3). They further indicated that Attorney McDonald's hourly rates were reasonable in view of her experience and skill level and that they were consistent with the community's prevailing hourly rates (Dkt. No. 204-3 ¶¶5, 6; Dkt. No. 204-4 ¶4; Dkt. No. 204-5 ¶4). *Compare Rosie D. ex rel. John D. v. Patrick*, 593 F. Supp. 2d 325, 329 (D. Mass. 2009) ("In connection with the calculation of the appropriate hourly rate [under the lodestar method used to calculate statutory fee awards], the First Circuit requires that affidavits be submitted attesting to the reasonableness

of the rates by knowledgeable attorneys unconnected to the underlying litigation"). The Plaintiff's submissions demonstrate that Attorney McDonald's hourly rates are reasonable.

Likewise, Plaintiff has established the propriety of the hourly rates of the members of Attorney McDonald's law firm who worked with her on the counterclaim. Attorney Peter W. Shrair, Attorney John W. Davis, and Attorney Susan McCoy assisted Attorney McDonald in their areas of expertise, including securing real estate and bankruptcy (Dkt. No. 204-2 ¶¶12, 14, 15). In view of the reasonableness of Attorney McDonald's hourly rates, Plaintiff has shown that the hourly rates of these attorneys, and an associate of the firm and a paralegal who performed minimal work, are based upon the prevailing market rates (Dkt. No. 204-1 at 4, 17, 20; Dkt. No. 204-2 ¶13). *Compare E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 356 (D. Mass. 2013) ("Courts are free to take account of myriad factors in fashioning a reasonable hourly rate, including 'the type of work performed, who performed it, the expertise that it required, and when it was undertaken'") (quoting *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 951 (1st Cir. 1984)).

2. Hours reasonably expended

In response to the court's decision on Plaintiff's first request for fees, the renewed motion for attorneys' fees eliminates Attorney McDonald's hours that were expended on the original case. Attorney McDonald's affidavit explains her history with the original case and the counterclaim (Dkt. No. 204-2). She began work on the counterclaim in October 2013 (Dkt. No. 204-1 at 2; Dkt. No. 204-2 at ¶5). Plaintiff retained her in January 2015 to address insurance coverage for the 2011 claims in the original suit (Dkt. No. 204-2 ¶¶5, 6, 7). The attorneys' fees for the original case were separately billed to the insurer, except fees in the amount of $3,540 for Attorney McDonald's work on the original suit (Dkt. No. 204-2 ¶8). This amount has been subtracted from the itemized invoices that were submitted to support the renewed motion at issue

here (Dkt. No. 204-1 at 21-26; Dkt. No. 204-2 ¶¶8, 9). Accordingly, the itemized attorneys' fees for the counterclaim total $145,399.

      The court is cognizant of Plaintiff's success at trial, at which Plaintiff's counsel effectively presented her client's case. The court, in addition, is cognizant that Defendants deliberately delayed resolution of the case, and engaged in other conduct that wasted the time of the court and Plaintiff's counsel, and unnecessarily increased the costs Plaintiff incurred in obtaining the judgment to which it was entitled. Nonetheless, the attorneys' fees for work on five of Plaintiff's motions, which were not necessary to Plaintiff's success on the merits of the case, are reduced by 50%. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended' . . . . Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . .") (quoting S. Rep. No. 94–1011, at 6 (1976)). *Compare United States v. One Star Class Sloop Sailboat*, 546 F.3d 26, 39 (1st Cir. 2008) ("Even when a party prevails on a particular claim, however, he is only entitled to recover fees for time productively spent. Consequently, time invested in issues that are litigated profligately, unnecessarily, or without benefit to the prevailing party may be disallowed"); *Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 295 (1st Cir. 2001) (holding that, in determining reasonable fees under the lodestar method, the court "calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)"). The motions for which the fees are reduced are discussed in turn.

      a. Motion for an emergency temporary restraining order.

After the original suit was settled in June 2015, Plaintiff moved for an emergency temporary restraining order and requested an equitable attachment of Defendants' settlement award (Dkt. No. 104). The court denied the motion and the request for an attachment on July 7, 2015 (Dkt. No. 111, 114). The requested equitable relief was not available because the counterclaim sought money damages, which are a legal remedy (*id.*). *See Tamposi v. Denby*, 988 F. Supp. 2d 152, 158-59 (D. Mass. 2013). Attorney McDonald worked on the motion for 33.7 hours on June 15, 16, 17, 18, 22, 23, and 25, 2015 and on July 6 and 7, 2015, and Attorney Shrair worked for 3.65 hours on June 16, 2015 and on July 6 and 7, 2015 (Dkt. No. 204-1 at 29-33).[1] The fees for their work on this motion total $11,424 (Dkt. No. 204-1 at 29-33). The court awards 50% of these fees: $5,712. *Compare Gay Officers Action League,* 247 F.3d at 296 ("it is the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like"); *Bollitier v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen and Helpers*, 735 F. Supp. 623, 630 (D.N.J. 1989) (disallowing time expended on preliminary injunction that Plaintiff failed to secure and a "fruitless" motion in *limine*).

b. Motion for summary judgment.

Plaintiff did not prevail on its motion for summary judgment, which was filed on August 4, 2014 (Dkt. Nos. 134, 145). In denying the motion the court stated:  "In light of Edwin Gray's

---

[1] Although Plaintiff submitted invoices, which itemized the time spent on specific tasks, as opposed to "block billing," which is disfavored by the courts because it requires judges to decipher the amount of time spent on each task, Plaintiff did not calculate the total time spent on each motion. *See E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 354-55 (D. Mass. 2013) ("'Block billing' is an industry term used to describe 'the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks'") (quoting *Conservation Law Found., Inc. v. Patrick,* 767 F. Supp. 2d 244, 253 (D. Mass. 2011)). As a result, the court calculated the time expended on each motion based on the invoices' descriptions of the work performed on specific dates.

answers to interrogatories, the non-movants have met their burden of placing at least one material fact in dispute" (Dkt. No. 145).  *See* Fed. R. Civ. P. 56(a).  Attorney McDonald charged Plaintiff $9,000 for the 30 hours that she expended on this motion on July 27, 30, and 31, 2015, August 3, 2015, September 1, 2015, and October 1 and 14, 2015 (Dkt. No. 104-1 at 35, 36, 38, 40).  This amount is reduced by 50% to $4,500 to reflect that Defendants' testimony, while perhaps not credible, was sufficient to raise a genuine issue of material fact.  *See Clark v. Shop24 Glob., L.L.C.,* Case No. 2:12-cv-802, 2016 WL 3639893, at *10 (S.D. Ohio July 8, 2016) ("At the same time, courts have denied fee requests where there were genuine issues of material fact that did not warrant the filing of a summary judgment motion, finding time spent on such motions to be unreasonable") (citing *Robinson v. Fetterman*, 387 F. Supp. 2d 432, 437 (E.D. Pa. 2005); *Grantham v. Moffett*, Civ. A. No. 93-4007, 1996 WL 3750, *5 (E.D. La. Jan. 3, 1996), *aff'd*, 101 F.3d 699 (5th Cir. 1996)); *Astro-Med, Inc. v. Plant*, C.A. No. 06-533 ML, 2008 WL 2883769, at *4 (D.R.I. July 25, 2008), *amended in part by* No. CA 06-533 ML, 2010 WL 537101 (D.R.I. Feb. 12, 2010) (holding that "the court should avoid compensating 'wasteful litigation'") (quoting *French v. Corp. Receivables, Inc.*, 489 F.3d 402, 404 (1st Cir. 2007)).

                              c.  Three pre-trial motions.

Plaintiff filed three pre-trial motions on which it did not prevail:  a motion for default judgment due to Defendants' failure to answer the amended complaint (Dkt. No. 151); a motion in *limine* to preclude Defendants from offering a defense at trial due to their failure to answer the amended complaint, as an alternative to the motion for default judgment (Dkt. No. 152); and a motion in *limine* to preclude Defendants from offering a defense at trial due to spoliation of evidence, specifically the feed that was consumed by Defendants' birds (Dkt. No. 153).  The $5,190 in fees for Attorney McDonald's preparation of these three motions over 17.3 hours on

January 11, 14, and 15, 2016 is reduced by 50% -- $2,595 -- because the motions, which the court denied, were not necessary to Plaintiff's success at trial (Dkt. Nos. 163, 164, 166; Dkt. No. 204-1 at 44-45).  *Compare Cox v. Cont'l Cas. Co.*, No. C13-2288 MJP, 2015 WL 3844270, at *7 (W.D. Wash. June 19, 2015) (acknowledging that the necessary evidence for both the prevailing claims and unsuccessful claims overlapped, but still reducing the overall attorney fees by one-third to account for the time spent on unsuccessful legal theories); *Ewald v. Royal Nor. Embassy*, Civil No. 11-CV-2116 (SRN/SER), 2015 WL 1746375, at *10 (D. Minn. Apr. 13, 2015) ("It may be appropriate, in some instances, 'to deny fees for work on unsuccessful motions that did not otherwise advance the case and . . . would not have been necessary if the party had pursued successful avenues'") (quoting *Jones v. Fleetwood Motor Homes,* 127 F. Supp. 2d 958, 973 (N.D. Ill. 2000)); *Norkunas v. HPT Cambridge, L.L.C.*, 969 F. Supp. 2d 184, 195-96 (D. Mass. 2013) (reducing attorney's time for a sanction motion filed during the trial that the court deemed to be "unnecessary").

        3.    <u>Summary</u>

Based on the court's determinations that the attorneys' hourly rates are reasonable, and that the fees charged for five identified motions should be reduced by 50%, the court's award for attorneys' fees is summarized as follows:

| | | | |
|---|---|---|---|
| Amount requested: | | | $145,399 |
| Less: | 50% of fees for motion for temporary restraining order | $5,712 | |
| | 50% of fees for summary judgment motion | 4,500 | |
| | 50% of fees for three pre-trial motions | <u>2,595</u> | |
| | | | (12,807) |

Total fees awarded                                                                                                          $132,592.

      C.      <u>Additional Post-judgment Fees</u>

Plaintiff seeks "[a]dditional fees incurred in collecting" under the contract (Dkt. No. 204-2 ¶23). Plaintiff states, however, that "[c]ounsel has no way of determining what post judgment work and/or proceedings will be required as they depend on Defendants' actions . . ." (*id.*). The court is not inclined to award prospective fees.

      III.      <u>CONCLUSION</u>

For these reasons, Plaintiff's Renewed Motion for Attorneys' Fees and Costs (Dkt. No. 204) is ALLOWED, as modified by this court. The total attorneys' fees and costs awarded to Plaintiff is $139,361.42. The Clerk's Office shall enter a judgment including the award of fees and costs. The case may now be closed.

It is so ordered.

                                                /s/ Katherine A. Robertson
                                                KATHERINE A. ROBERTSON
                                                United States Magistrate Judge

DATED: July 21, 2016